IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| MELNOR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:16CV00059 |
| | ) | |
| ORBIT IRRIGATION PRODUCTS, INC., | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

In this patent case, plaintiff Melnor, Inc. seeks a declaratory judgment that irrigation

timers it sells do not infringe patents held by Orbit Irrigation Products, Inc.  The case is before

the court on Orbit's motion to dismiss for lack of personal jurisdiction (Mot. Dismiss, Dkt. No.

8) and Melnor's motion for jurisdictional discovery (Mot. Disc., Dkt. No. 16), which Melnor

filed in response to Orbit's motion.  Both motions have been fully briefed and are ripe for

disposition.  For the reasons stated herein, the court will grant Orbit's motion to dismiss and

deny Melnor's motion for jurisdictional discovery.

## I.   BACKGROUND

Melnor, a Delaware corporation with its principal place of business in Virginia, filed this

declaratory judgment action against Orbit, which is incorporated and headquartered in Utah.

(Compl. ¶¶ 1–2, Dkt. No. 1.)  Both Melnor and Orbit sell irrigation timers in Virginia and

throughout the United States.  (*Id.* ¶¶ 5, 9.)  Melnor alleges that a "vast majority" of Orbit's sales

are concentrated on the East Coast with a "significant volume" made in Virginia through big-box

stores like Lowe's and The Home Depot, and online through Amazon.com and other sites.  (*Id.*

1

¶ 5.)  It further alleges that "[p]ersonal jurisdiction exists generally over Defendant Orbit because it regularly conducts business in the Commonwealth of Virginia and in this District."  (*Id.* ¶ 6.)

Two patents protect Orbit's irrigation timers: U.S. Design Pat. No. D750,506 (506 Patent) and U.S. Design Pat. No. D750,977 (977 Patent) (collectively, the design patents).[1]  (*Id.* ¶ 4, Exs. A–B.)  At some point, Orbit sent Melnor a letter accusing it of violating Orbit's design patents by selling infringing irrigation timers and then filed a patent infringement suit against Melnor in the United States District Court for the District of Utah on April 18, 2016.  (*Id.* ¶¶ 11– 12.)  Orbit and Melnor representatives met on June 6, 2016, and July 19, 2016, to discuss the infringement suit, but no agreement was reached at either meeting.[2]  (*Id.* ¶¶ 13–14.)  Orbit subsequently dismissed that case on August 16, 2016 (*id.* ¶ 15), and Melnor filed this declaratory judgment action two weeks later.

Orbit moved to dismiss Melnor's complaint for lack of personal jurisdiction.  In support of its motion, Orbit submitted a declaration from Mitch Lord, Orbit's Executive Vice President. (Lord Decl. ¶ 2, Dkt. No. 9-1.)  Lord asserts that Orbit's Virginia sales account for less than two percent of its total volume of sales in the United States.  (*Id.* ¶ 6.)  Lord also notes that Orbit has no warehouses, manufacturing plants, or other facilities in Virginia; is not incorporated or registered to do business in Virginia; has no agents, sales representatives, or employees in Virginia; has no accounts in Virginia banks; has no assets in Virginia; has not filed any actions to enforce the design patents in Virginia; and has not entered into any license agreements regarding the patents, in Virginia or elsewhere.  (*Id.* ¶¶ 7–14.)  Finally, Lord claims that Orbit has not visited Melnor's Virginia facilities, and that the June 6 and July 17 meetings between Melnor

---

[1] Melnor also seeks preliminary and permanent injunctions against infringement actions based on U.S. Pat. No. D713,271, although that patent is not mentioned elsewhere in the complaint.

[2] The complaint is silent as to the location of these meetings.

and Orbit representatives did not occur in Virginia; instead, they occurred via Skype, with

Orbit's representatives in Utah and Melnor's representatives at the office of their then-counsel in

Washington, D.C.   (*Id.* ¶¶ 15–16.)

In response to Orbit's motion to dismiss, Melnor filed a motion for jurisdictional

discovery, seeking to resolve purported factual disputes about the amount of Orbit's Virginia

sales and the communications between the parties.  (*See* Pl.'s Br. Supp. Mot. Disc. (Pl.'s Br.)

¶¶ 7–8, Dkt. No. 17.)  With its reply (Dkt. Nos. 26, 28), Melnor submitted a declaration from

Juergen Nies, Melnor's President, and copies of Melnor's supplier agreements with Lowe's and

Home Depot.[3]  (Dkt. Nos. 28-, 28-2.)  Melnor asserts that Orbit likely has similar agreements

with those stores, and that the declaration and agreements contradict Lord's claims that Orbit has

no Virginia assets or licenses of its design patents.

## II.  DISCUSSION

### A.  Personal Jurisdiction

This court applies Federal Circuit law to determine whether personal jurisdiction exists in

a patent declaratory judgment action.  *Xilinx, Inc. v. Pabst Licensing GmbH & Co., KG*, 848 F.3d

1346, 1352 (Fed. Cir. 2017); *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016

(Fed. Cir. 2009); *Robinson v. Bartlow*, No. 3:12-cv-24, 2012 U.S. Dist. LEXIS 143323, at *5

(W.D. Va. Oct. 3, 2012).  Where, as here, the court resolves the jurisdictional question "based on

affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need

only to make a *prima facie* showing that defendants are subject to personal jurisdiction."

*Autogenomics*, 566 F.3d at 1017 (quoting *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349

(Fed. Cir. 2003)).  The court "must accept the *uncontroverted* allegations in the plaintiff's

---

[3] Melnor's agreement with Home Depot is filed under seal, and Melnor's reply brief and the Nies declaration are redacted to the extent they quote that agreement.  Unredacted versions of those documents are also filed under seal.

complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.* (emphasis in original); *accord Xilinx*, 848 F.3d at 1352.

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics*, 566 F.3d at 1017 (quoting *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)). Because Virginia Code § 8.01-328.1—Virginia's long arm statute—"extends personal jurisdiction to the limits allowed by due process," *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004), the court's statutory analysis merges with the constitutional question. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396–97 (4th Cir. 2003); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) ("[B]ecause California's long-arm statute is coextensive with the limits of due process, the two inquires collapse into a single inquiry: whether jurisdiction comports with due process.").

In *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Supreme Court recognized that due process authorizes a state to "exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe*, 326 U.S. at 316) (internal quotations omitted) (alteration in original); *accord Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Two categories of personal jurisdiction have developed from this principle: general jurisdiction and specific jurisdiction. *Daimler*, 134 S. Ct. at 754; *Autogenomics*, 566 F.3d at 1017. General personal jurisdiction exists when the defendant's "affiliations with the state are so 'continuous and systematic' as to render it essentially at home

in the forum state." *Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 317); *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 416 (1984). "Specific jurisdiction, on the other hand, must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Autogenomics*, 566 F.3d at 1017. Melnor argues that the jurisdictional facts alleged establish both specific and general personal jurisdiction. The court will address both theories in turn.

### 1. General jurisdiction

General personal jurisdiction, or all-purpose jurisdiction, allows courts to adjudicate claims against a defendant regardless of whether those claims arose from the defendant's contacts with the forum state. *See Daimler*, 134 S. Ct. at 751, 754; *Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003) ("[G]eneral jurisdiction . . . confers personal jurisdiction even when the cause of action has no relationship with those contacts."). In order for this court to have general jurisdiction, Orbit's contacts with Virginia must be "'so continuous and systematic' as to render [it] essentially at home" in Virginia. *Goodyear*, 564 U.S. at 919. The "paradigm bases for general jurisdiction" over a corporation are its place of incorporation and principal place of business, *Daimler*, 134 S. Ct. at 760 (citation omitted), although in exceptional cases general jurisdiction may be proper in other jurisdictions where a corporation's business is sufficiently continuous and systematic. *Id.* at 761 n.19; *Collier v. Land & Sea Rest. Co.*, No. 7:13-cv-104, 2014 U.S. Dist. LEXIS 147118, at *9–11 (W.D. Va. Oct. 15, 2014) ("Post-*Daimler*, it is clear that general jurisdiction over a non-resident corporate defendant who has no offices or other strong connections to the forum, is permitted only in the 'exceptional' case.").

Melnor fails to make out a prima facie case of general jurisdiction.  Virginia is not

Orbit's place of incorporation or principal place of business, so general jurisdiction is proper

only if this is the "exceptional case" where Orbit's contacts are comparably systematic.  *See*

*Daimler*, 134 S. Ct. at 761 n.19; *Design Res., Inc. v. Leather Indus. of Am.*, 900 F. Supp. 2d 622,

639 (M.D.N.C. 2012) (noting that "general jurisdiction is ordinarily reserved for those

defendants who have such substantial contacts with the forum state that they may be considered

'essentially domiciled' within that state")  As Lord's largely undisputed declaration makes clear,

Orbit lacks many of the kinds of contacts that would be expected of a corporation that is at home

in Virginia: for example, Orbit has no physical locations, agents, sales representatives,

employees, or bank accounts in Virginia, and is not registered to do business in Virginia.  (Lord

Decl. ¶¶ 7–11.)  Melnor does not dispute these facts; instead, it claims that the court may

exercise general jurisdiction over Orbit by virtue of its "significant volume of sales" to Virginia

customers and arrangement with distributors that sell products in Virginia.  (Compl. ¶ 5.)

Melnor's reliance on bare allegations that Orbit "regularly conducts business in the

Commonwealth" and has "a significant amount of sales in the Commonwealth" is unavailing.

(Compl. ¶¶ 5–6; Pl.'s Br. Opp'n 6–7, Dkt. No. 32.)  Although Melnor characterizes Orbit's

Virginia sales as "significant," those sales apparently account for less than two percent of its total

volume of sales within the United States.[4]  (Lord Decl. ¶ 6.)  As the *Daimler* court made clear,

> [t]he general jurisdiction inquiry does not focus solely on the
> magnitude of the defendant's in-state contacts.  General
> jurisdiction instead calls for an appraisal of a corporation's

---

[4] Melnor's brief in opposition, which describes the revenue generated by Orbit's Virginia sales, suggests that Orbit's Virginia sales exceed two percent of its total domestic sales.  (Pl.'s Br. Opp'n 10–11.)  However, the cited revenue figures do not appear in Melnor's complaint or in Nies's declaration.  "[I]t is 'well-settled that a complaint cannot be amended by the plaintiff's brief in opposition to a motion to dismiss.'"  *Botkin v. Fisher*, No. 5:08-cv-58, 2009 U.S. Dist. LEXIS 24554, at *20 (W.D. Va. Mar. 25, 2009) (quoting *Bessinger v. Food Lion, Inc.*, 305 F. Supp. 2d 574, 581 (D.S.C. 2003)).  Moreover, Melnor does not explain how those additional sales would make Orbit at home in Virginia.

> activities in their entirety, nationwide and worldwide.  A corporation that operates in many places can scarcely be deemed at home in all of them.  Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.  Nothing in *International Shoe* and its progeny suggests that 'a particular quantum of activity' should give a State authority over a 'far larger quantum of . . . activity' having no connection to any in-state activity.

*Daimler*, 134 S. Ct. at 762 n.20 (citations omitted).  Indeed, in *Daimler*, the Supreme Court denied general jurisdiction over the defendant in California, although it was "the largest supplier of luxury vehicles to the California market,"[5] where the defendant's California sales amounted to just over two percent of its worldwide sales.  *Id.* at 752.  Thus, Melnor's conclusory allegation that Orbit's Virginia sales are significant does not establish a prima facie case of general personal jurisdiction here.

Melnor disputes Lord's claims that Orbit has no assets or licenses in Virginia.  Both Melnor and Orbit sell products to retailers in Virginia, including Lowe's and Home Depot. (Compl. ¶ 5.)  Noting that Home Depot requires suppliers to enter into a supplier agreement and pointing to the terms of its own supplier agreement, Melnor argues that Orbit likely has an agreement with The Home Depot under which (1) Orbit retains the risk of loss for Orbit products located at Home Depot distribution centers before reaching their final destination; and (2) Orbit grants Home Depot a non-exclusive, royalty-free license to its intellectual property so that it can display Orbit products for sale.  Therefore, Melnor claims, Lord's statements that Orbit has no assets in Virginia and does not license its products in Virginia are inaccurate.

---

[5] Technically speaking, Mercedes-Benz USA, LLC (MBUSA) was the supplier of vehicles.  *Id.* at 752. However, the Court held that general personal jurisdiction was improper even assuming that MBUSA's contacts were imputable to Daimler.  *Id.* at 760.

Assuming that Orbit has comparable agreements with its Virginia retailers and that Melnor's evidence controverts Lord's affidavit, these are simply not the kinds of contacts that would make Orbit "at home" in Virginia. *Goodyear*, 564 U.S. at 919. Orbit's purported arrangements with big-box retailers, by Melnor's description, is part and parcel of its ability to sell products to those retailers and, by extension, to Virginia. (Nies Decl. ¶ 6.) Were these contracts sufficient to make Orbit amenable to general personal jurisdiction in Virginia, the same would be true in every other state where Orbit's products were sold pursuant to a supplier agreement.[6] The Supreme Court has held that "[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Daimler*, 134 S. Ct. at 761–62 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see Goodyear*, 564 U.S. at 929 (noting that "every seller of chattels does not, by virtue of the sale, 'appoint the chattel his agent for service of process'") (quoting *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980)). This reasoning applies with equal force here. Accordingly, the court finds that Melnor's allegations fail to establish a prima facie case of general personal jurisdiction.

### 2. Specific jurisdiction

The court now turns to Melnor's arguments regarding specific personal jurisdiction. Although Melnor argues that the court has both specific and general personal jurisdiction over Orbit, its complaint alleges only general jurisdiction. In its reply, Melnor requests leave to amend in order to allege specific jurisdiction explicitly. (Pl.'s Reply Br. 6 n.3, Dkt. No. 32.) "Under Federal Rule of Civil Procedure 15(a)(2), the 'grant or denial of an opportunity to amend

---

[6] Furthermore, even if characterized as Orbit's assets, irrigation timers sitting at a distribution center—that is, irrigation timers in the stream of commerce—are not an adequate basis for exercising general personal jurisdiction here. *See Goodyear*, 564 U.S. at 927–29.

is within the discretion of the district court,'" *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (quoting *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 121 (4th Cir. 2013)); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962), although the rule instructs the court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Denying leave to amend is appropriate when amendment would be futile. *Scott*, 733 F.3d at 121 (quoting *Laber v. Harvey*, 438 F.3d 404, 426–27 (4th Cir. 2006)). The court will therefore consider the merits of Melnor's specific jurisdiction argument to determine whether amending its complaint to allege specific jurisdiction would be futile.

Unlike general jurisdiction, "specific jurisdiction is confined to adjudication of 'issues deriving from or connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, 564 U.S. at 919 (citation omitted). The Federal Circuit has "summarized the Supreme Court's due process jurisprudence in a three-factor test: (1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities in the forum; and (3) whether assertion of personal jurisdiction would be reasonable and fair." *Xilinx*, 848 F.3d at 1353. "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Autogenomics*, 566 F.3d at 1019 (quoting *Inamed*, 249 F.3d at 1360).

The Federal Circuit has had several opportunities to explain how these principles apply in the declaratory judgment context. "The injury of which a declaratory judgment plaintiff complains . . . is the wrongful restraint on the free exploitation of non-infringing goods." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (1998). Accordingly, "the contacts material to the specific jurisdiction analysis in a declaratory judgment action are

not just any activities related to the patent-at-issue.  Rather, the relevant activities are those that the defendant 'purposefully directs . . . at the forum which relate in some material way to the enforcement or the defense of the patent.'"  *Autogenomics*, 566 F.3d at 1019–20 (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1335 (Fed. Cir. 2008)).  "Thus, courts must examine the jurisdictional facts for conduct whereby the patentee 'may be said to purposefully avail itself of the forum and to engage in activity that relates to the validity and enforceability of the patent.'"  *Id.* at 1020 (quoting *Avocent*, 552 F.3d at 1336).

Because of "policy considerations unique to the patent context," *Silent Drive*, 326 F.3d at 1206, the Federal Circuit has recognized that "certain types of contacts, by themselves, are not sufficient to establish the reasonableness of jurisdiction."  *Xilinx*, 848 F.3d at 1357 (citing *Red Wing*, 148 F.3d at 1360–61).  As the *Red Wing* court recognized:

> Principles of fair play and substantial justice afford a patentee
> sufficient latitude to inform others of its patent rights without
> subjecting itself to jurisdiction in a foreign forum.  A patentee
> should not subject itself to personal jurisdiction in a forum solely
> by informing a party who happens to be located there of suspected
> infringement.  Grounding personal jurisdiction on such contacts
> alone would not comport with principles of fairness.

*Red Wing*, 148 F.3d at 1360–61.  Thus cease-and-desist letters or similar communications, by themselves, cannot support specific personal jurisdiction in a patent declaratory judgment action, although the action arises from the letters.  *Id.* at 1360.  A declaratory judgment plaintiff must allege additional "other activities" related to enforcement of the patents in the forum.  *Avocent*, 552 F.3d at 1334; *see Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) (describing enforcement activities sufficient to confer specific personal jurisdiction in declaratory judgment actions).

Even if Melnor amended its complaint to allege specific jurisdiction, Melnor could not make a prima facie case because it has not alleged sufficient enforcement activities in Virginia. Melnor's complaint describes three enforcement-related activities: (1) the written accusation of infringement (Compl. ¶ 11); (2) the Utah infringement action (*id.* ¶ 12); and (3) the meetings between Orbit and Melnor regarding the infringement claim.  (*Id.* ¶¶ 13–14.)  Although an infringement suit in the forum could be sufficient "other activity" to render personal jurisdiction reasonable, *see Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996), Orbit filed its infringement action in Utah.  Furthermore, per Lord's undisputed declaration, the discussions about that suit occurred via Skype call between Utah and Washington, D.C.  (Lord Decl. ¶ 16.)  The only enforcement contact with Virginia that Melnor identifies was the cease-and-desist communication, which it ostensibly received in Virginia. Accordingly, Melnor's allegations of specific jurisdiction fall short.  *Breckenridge*, 444 F.3d at 1366.

Recognizing that Federal Circuit precedent requires "other activities" beyond cease-and-desist or similar communications, Melnor asks the court to consider Orbit's commercialization activities as part of the specific jurisdiction analysis.  (Pl.'s Br. Opp'n 7.)  Specifically, Melnor points to Orbit's "revenue-generating relationship with Home Depot" that places Orbit products in Virginia and allows Orbit to exploit Virginia's commercial markets.  (*Id.*)  However, the Federal Circuit has held explicitly that commercialization activity is not the sort of "other activity" that will establish personal jurisdiction.  *Avocent*, 552 F.3d at 1335; *accord Autogenomics*, 566 F.3d at 1020; *see Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 790 (Fed. Cir. 2011) (finding that defendant's commercialization activities, including contacting the plaintiff in the forum and visiting the forum to display the product, did not establish personal

11

jurisdiction in a declaratory judgment action).  Those contacts are therefore immaterial to the court's inquiry here.

Melnor cites *Genetic Implant*, 123 F.3d at 1458, in support of its claim that Orbit's commercialization activities are "other activities" that can confer specific jurisdiction.  The *Genetic Implant* court did in fact note that the defendant in that case "engaged in a program to develop a market in Washington, including . . . developing Washington customer lists . . . and advertising in publications distributed to potential Washington customers." *Id*.  However, the defendant also had an agreement with an exclusive distributor that was "analogous to a grant of a patent license." *Id*.  Unlike marketing and other commercialization efforts, entering into an exclusive license is relevant to specific personal jurisdiction. *See Breckenridge*, 444 F.3d at 1366–67; *Akro*, 45 F.3d at 1546.  The Federal Circuit has consistently cited the agreement in *Genetic Implant* as the basis for the decision, *see Avocent*, 552 F.3d at 1334–35; *Breckenridge*, 444 F.3d at 1366, and made clear post-*Genetic Implant* that commercialization activities do not give rise to personal jurisdiction in declaratory judgment actions. *E.g.*, *Radio Sys.*, 638 F.3d at 789 (quoting *Avocent*, 552 F.3d at 1332).  Accordingly, *Genetic Implant* does not require a different conclusion here.

Because Orbit's only alleged enforcement-related contact with Virginia was a cease-and-desist communication, Melnor's allegations are insufficient to support a prima facie case of specific personal jurisdiction.  Thus, even if amended to allege specific personal jurisdiction, Melnor's complaint would have to be dismissed pursuant to Rule 12(b)(2).  For that reason, amendment is futile, and the court will deny Melnor's request for leave to amend pursuant to Rule 15(a)(2).

**B. Jurisdictional Discovery**

The court now turns to Melnor's motion for jurisdictional discovery.  In the Fourth

Circuit,[7] "whether or not to permit jurisdictional discovery is a matter committed to the sound

discretion of the district court."  *Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory*,

283 F.3d 208, 216 n.3 (4th Cir. 2002).  "[J]urisdictional discovery is appropriate when 'the

existing record is inadequate to support personal jurisdiction and a party demonstrates that it can

supplement its jurisdictional allegations through discovery.'"  *Robinson*, No. 3:12-cv-24, 2012

U.S. Dist. LEXIS 143323, at \*22 (quoting *Trintec Indus., Inc. v. Pedre Promotional Prods.*, 395

F.3d 1275, 1283 (Fed. Cir. 2005)).  Although "discovery under the Federal Rules of Civil

Procedure is broad in scope and freely permitted," *Carefirst*, 334 F.3d at 402, a court may deny

"a fishing expedition" conducted "in the hopes of discovering some basis of jurisdiction."  *Base*

*Metal*, 283 F.3d at 216 n.3; *see Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 330 n.\* (4th Cir.

2013) ("Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and

based on bare allegations in the face of specific denials made by defendants, the Court need not

permit even limited discovery confined to issues of personal jurisdiction should it conclude that

such discovery will be a fishing expedition.") (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254,

259 (M.D.N.C. 1988)); *Carefirst*, 334 F.3d at 402 ("When a plaintiff offers only speculation or

conclusory assertions about contacts with a forum state, a court is within its discretion in denying

jurisdictional discovery.").

In its motion, Melnor claims that jurisdictional discovery will help it clarify factual

disputes about "the amount of sales of Orbit products in Virginia" and "the communications

between Melnor and Orbit."  (Mot. Disc. ¶¶ 7–8.)  Melnor appears to argue that this discovery

---

[7] Although Federal Circuit law governs the ultimate jurisdictional question, Fourth Circuit governs whether to permit jurisdictional discovery.  *See Patent Rights Prot. Group, LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010).

will help supplement its allegations of general and specific jurisdiction.  (Pl.'s Reply Br. 8.)  As

discussed, its complaint alleges only general personal jurisdiction.  The court will nevertheless

analyze Melnor's request for jurisdictional discovery as to specific personal jurisdiction in order

to address the futility of amendment.  Because Melnor has not shown that it can meaningfully

supplement its general or specific jurisdictional allegations with discovery, the court finds

jurisdictional discovery unwarranted here.

First, discovery as to the amount of Orbit's Virginia sales is unwarranted because it will

not alter the court's analysis.  *See Carefirst*, 334 F.3d at 403.  Melnor has provided no reason,

beyond conclusory allegations that Orbit's Virginia sales are "significant," to doubt that Orbit's

sales account for less than two percent of its total volume of sales in the United States.  (Lord

Decl. ¶ 6.); *see Unspam Techs.*, 716 F.3d at 330 n.*.  Because further discovery regarding the

amount of those sales will not affect the court's general jurisdiction analysis in light of *Daimler*,

134 S. Ct. at 762 n.20, and because Orbit's Virginia sales do not bear on the specific personal

jurisdiction analysis in light of Federal Circuit precedent discussed above, that discovery is

unwarranted.

Second, Melnor has not shown that discovery as to its communications with Orbit will

help it supplement its jurisdictional allegations.  Although Melnor does not identify specifically

what is "disputed" about its conversations with Orbit (Mot. Disc. ¶ 8), Melnor was a party to

those communications.  Accordingly, it is in as good of a position as Orbit to know the nature of

those communications and the extent to which they occurred in Virginia.  *See Titan Atlas Mfg. v.*

*Sisk*, No. 1:11-cv-12, 2011 U.S. Dist. LEXIS 76722, at *9 (W.D. Va. July 15, 2011)

("Information regarding [a party's] own actions, of course, is within [its] knowledge and,

therefore, would not require jurisdictional discovery.").  Accordingly, Melnor has not shown that

it can supplement its jurisdictional allegations through this discovery, and the court will deny its

motion.

### III. CONCLUSION

For the foregoing reasons, the court will grant Orbit's motion to dismiss and deny

Melnor's motion for jurisdictional discovery.  An appropriate order will be entered.

Entered: April 7, 2017.


*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge